ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**MAY 2 3 2014**

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| JENNIFER CIRAVOLO, Individually and as Administrator of the Estate of Jonathan William Holden, *Plaintiff* | § § § § § |
| v. | § § |
| TARRANT COUNTY, TARRANT COUNTY SHERIFF DEE ANDERSON (in his official capacity), EXECUTIVE CHIEF DEPUTY BOB KNOWLES (in his official capacity), and a presently unknown number of JOHN DOES and JANE DOES, *Defendants* | § § § § § § § § |

CIVIL ACTION NO. 4:14-cv-00200-A

**PLAINTIFF'S SECOND AMENDED COMPLAINT,**
**PETITION FOR DECLARATORY JUDGMENT, AND JURY DEMAND**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT SITTING IN THE NORTHERN DISTRICT OF TEXAS:

Plaintiff Jennifer Ciravolo, individually and as Administrator of the Estate of Jonathan William Holden ["Mr. Holden"], comes to this court complaining that Defendant deprived Mr. Holden of (1) his civil rights under color of law and (2) rights secured through the Americans with Disabilities Act ["ADA"]. Plaintiff also seeks a declaratory judgment establishing Plaintiff's right to exhume Mr. Holden's remains and relocate them to their proper resting place. In support thereof, Plaintiff specifically alleges the following:

## I.    NATURE OF THE ACTION

1.    Defendant deprived Mr. Holden of his rights to: (a) life; (b) remain free from arbitrary punishment; (c) protection; (d) reasonable accommodations; and (d) adequate care.

1

2.     This suit arises primarily under the Constitution of the United States (particularly the Fourth, Fifth, and Fourteenth Amendments to the Bill of Rights) and the laws of the United States (particularly the Civil Rights Act and the Americans with Disabilities Act).

3.     Mr. Holden lived 30 years and died approximately two weeks after arriving in Defendant's custody.

4.     Defendant Tarrant County buried Mr. Holden's remains in Mansfield, Texas without (1) performing a reasonable investigation into his next of kin and (2) informing his next of kin that he died.

## II.     <u>SUMMARY OF THE ACTION</u>

5.     Defendant knew Mr. Holden was disabled and denied him the basic rights to protection, safety, and reasonable accommodations.

6.     The conditions of Mr. Holden's confinement caused him to suffer inadequate medical care, arbitrary punishment, and death.

7.     Despite having actual notice of Mr. Holden's disability, need for medical care, and need for protection, Defendant knowingly placed Mr. Holden near Steven Lawayne Nelson ["Nelson"], a violent, high-risk, physically superior, mentally unstable and schizophrenic sociopath who was formally accused of first-degree murder, held without bond, and allowed to roam outside of his cell unsupervised while armed with various weapons.

8.     Nelson killed Mr. Holden.

9.     Therefore, Defendant's conduct caused Mr. Holden's death.

2

### III.    DEMAND FOR JURY TRIAL

10.     Plaintiff respectfully demands a trial by jury.


### IV.    PARTIES

10.     Plaintiff Jennifer Ciravolo is a citizen and resident of North Richland Hills, Tarrant County, Texas. Jennifer Ciravolo is the sister and a legal heir of Jonathan William Holden and the Administrator of the Estate of Jonathan William Holden. On March 18, 2014, Jennifer Ciravolo was appointed the Administrator for the Estate of Jonathan William Holden in the Probate Court No. 1 of Tarrant County, Texas, cause number 2014-PR00381-1.

11.     Defendant Tarrant County is a county located in Texas and may be served with process by serving its County Judge, B. Glen Whitley, County Administration Building, 100 East Weatherford Street, Fort Worth, Texas 76196.


### V.    JURISDICTION AND VENUE

12.     This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4) because Plaintiff brings suit under 42 U.S.C. § 1983.

13.     This Court also has jurisdiction to hear the merits of Plaintiff's claims regarding the Americans with Disabilities Act under 42 U.S.C.A. §§ 12132 and 12133, 28 U.S.C. §§ 1331 and 1343(a) (3) and (4) because these claims arise under federal law and relate to the deprivation of civil rights and/or discrimination against disabled persons.

14.     This Court also has supplemental jurisdiction to hear Plaintiff's declaratory judgment under 28 U.S.C. § 1367 because it arises from a common nucleus of operative facts and is so related to the federal claims brought herein that it forms part of the same case or controversy.

15.     Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to these claims occurred in the Northern District of Texas in the Fort Worth Division.

16.     Venue is also proper in this district under 28 U.S.C. § 1391(c) because Defendant Tarrant County is an entity that resides in this district.

17.     All conditions precedent have been performed or have occurred.


## VI.     **FACTS**

### A.     **BACKGROUND**

18.     Mr. Holden was disabled within the meaning of the Americans with Disabilities Act because he had a severe mental deficiency.

19.     Mr. Holden's deficiency was open and obvious.

20.     Mr. Holden suffered from intermittent psychotic episodes, delusions, and schizophrenia.

21.     Mr. Holden subsequently became a user of methamphetamine.

22.     Mr. Holden suffered from a chronic debilitating disease.

23.     Mr. Holden's mental illness required reasonable accommodations.

24.     Defendant knew a doctor at its jail said Mr. Holden required "protective custody" and "MHMR observation".

25.     "MHMR" stands for "mental health and mental retardation."

26.     Defendant did not provide Mr. Holden with reasonable accommodations.

27.     Defendant did not provide Mr. Holden with a modicum of protection.

28.     Defendant did not provide Mr. Holden with "MHMR observation".

29.     Mr. Holden was never tried or convicted of a violent crime.

4

**B.    ARREST AND BOOKING**

30.    Mr. Holden was arrested in Tarrant County, Texas on or about March 4, 2012 for misdemeanor theft.

31.    Upon information and belief, it was cold outside and Mr. Holden broke into a car in an effort to seek warmth.

32.    Mr. Holden was booked into the Corrections Center at Tarrant County Jail on or about March 5, 2012.

33.    Mr. Holden had been previously arrested in Texas and had identified Jennifer Ciravolo as his next of kin or emergency contact person.

34.    On or about March 16, 2012, jail doctors recommended that Mr. Holden be transferred to Tank 55-B, a common holding area subject to direct supervision at the Correction Center for non-violent pre-trial detainees and low to medium-risk inmates.

**C.    TRANSFER TO THE BELKNAP UNIT**

35.    Instead of transferring Mr. Holden to Tank 55-B, Defendant transferred him to the Belknap Unit (350 W. Belknap, Fort Worth, Texas), a maximum security unit that houses and indirectly supervises dangerous high-risk inmates and pretrial detainees.

36.    Upon arrival in the Belknap Unit, Defendant placed Mr. Holden in a cell near Nelson.

37.    Defendant knew Nelson was strong, violent, schizophrenic, not medicated, incarcerated for murdering a preacher, frequently in and out of solitary confinement, and deviantly provocative (*e.g.,* by "gassing" other prisoners by spraying them with a mixture of his feces and urine).

5

38.     Defendant permitted Nelson to be outside of his cell, without supervision, armed with a broom and blankets, and with "hands-on" access to a disabled and vulnerable inmate like Mr. Holden.

39.     Nelson used the broom to provoke Mr. Holden (who remained in his cell).

40.     Nelson then fashioned a noose with blankets, lured Mr. Holden towards the bars, placed the noose around Mr. Holden's neck, and lifted him off the ground.

41.     Mr. Holden was unable to escape and was found hanging by his neck from a blanket looped around the bars of his cell.

42.     Nelson intended to kill Mr. Holden.

43.     Mr. Holden died shortly thereafter at John Peter Smith Hospital.

44.     Plaintiff was never contacted concerning Mr. Holden's arrest, his transfer to the Belknap Unit, his death, or his burial.

45.     Defendant buried Mr. Holden's body in Tarrant County, Texas.

46.     Tarrant County, Texas is not the final resting place chosen by Plaintiff.

47.     Defendant Tarrant County subsequently convicted Nelson of murdering the preacher.

48.     During the trial, Defendant Tarrant County introduced uncontroverted testimony from a fellow inmate who described Nelson's murder of Mr. Holden.

49.     Defendant Tarrant County convinced a jury to sentence Nelson to death.


## VII.     GENERAL ALLEGATIONS

50.     Defendant knew that Mr. Holden:

    a.      suffered from a chronic mental illness and/or was disabled;

    b.      was arrested for misdemeanor theft;

6

    c.    had not been convicted of the crime for which he was arrested;

    d.    was physically weak;

    e.    was unable to protect himself from Nelson;

    f.    was unable to protect himself from anyone armed with various weapons and allowed to move outside of his cell without supervision, especially someone like Nelson.

51.    Defendant also knew:

    a.    jail doctors recommended transferring Mr. Holden to tank 55-B;

    b.    Defendant instead transferred Mr. Holden to the Belknap Unit;

    c.    the Belknap Unit:

        i.    is not tank 55-B;

        ii.    did not accommodate Mr. Holden's known disability;

        iii.    is where Defendant deliberately placed high-risk inmates and dangerous pre-trial detainees;

        iv.    did not provide Mr. Holden with MHMR observation;

        v.    did not provide Mr. Holden with protective custody;

    d.    Mr. Holden was not a high-risk inmate;

    e.    Mr. Holden was not a dangerous pre-trial detainee;

    f.    any reasonable accommodation for a person like Mr. Holden included

        i.    a modicum of protection from other inmates; and

        ii.    reasonable medical care;

    g.    any reasonable accommodation for a person like Mr. Holden included a modicum of protection from inmates like Nelson;

h.    Mr. Holden's disability made him more vulnerable than a non-disabled person;

i.    Mr. Holden was more vulnerable than a non-disabled person;

j.    Mr. Holden's disability made it difficult for him to clearly think or communicate;

k.    Defendant placed Mr. Holden in a cell near Nelson;

l.    Nelson:

    i.    was a high-risk inmate;

    ii.    was schizophrenic;

    iii.    was not medicated;

    iv.    was accused of murdering a preacher;

    v.    had been charged with first-degree murder;

    vi.    was held without bond;

    vii.    was physically superior to Mr. Holden;

    viii.    was frequently sent to solitary confinement;

    ix.    had been involved in multiple acts of violence within the prison;

    x.    would provoke other prisoners by (*inter alia*) spraying them with a mixture of his feces and urine;

    xi.    had access to one or more implements that could be foreseeably used as weapons;

    xii.    was not confined to his cell; and

    xiii.    was not subject to direct supervision.

m.    Defendant placed Mr. Holden in mortal danger when Defendant placed him near Nelson; and

n.    Mr. Holden could not be housed safely near Nelson.

52.     Defendant drew (or must have drawn) the inference that Mr. Holden:

   a.     was disabled;

   b.     was weak;

   c.     was extremely vulnerable;

   d.     could not be housed safely near Nelson;

   e.     would not receive medical care in the Belknap Unit;

   f.     would not receive MHMR observation in the Belknap Unit;

   g.     would not receive protective custody in the Belknap Unit; and

   h.     would not receive reasonable accommodations in the Belknap Unit.

53.     Defendant deprived Mr. Holden of his rights to (*inter alia*):

   a.     life;

   b.     remain free from arbitrary punishment as a pre-trial detainee;

   c.     protection from other inmates;

   d.     reasonable accommodations under the Americans with Disabilities Act; and

   e.     access to adequate medical care.

54.     Defendant violated Mr. Holden's rights as an American with a disability because Defendant (*inter alia*) transferred him to the Belknap Unit near Nelson in contravention of common sense and the jail doctor's recommendations.

55.     Defendant's wrongful conduct aggravated Mr. Holden's pre-existing condition(s), thereby making Defendant liable for the full consequences of its wrongful conduct.

56.     Defendant Tarrant County unequivocally concedes Dr. Mansoor Mian recommended Mr. Holden be "Transfer[red] to Single Cell (55-B) *within Jail protocol.*" *Defendant's Motion to Dismiss,* p. 6 (emphasis added), *citing DA 009.* Dr. Mian thereby expressly invokes what a reasonable factfinder could interpret to be Tarrant County policies, procedures, and/or

9

customs. Defendant has also provided documents which appear to overrule the jail doctor's recommendations because Mr. Holden was already in 55A17. DA 008.

57.    As a consequence, Plaintiff unambiguously states a claim upon which relief can be granted insofar as Defendant has provided information (before even filing an Answer) that demonstrates Mr. Holden was transferred to the Belknap Unit in either accordance or discordance with jail policies, procedures, or customs ["protocol{s}"]. These "protocols" would be created (or not created) by Tarrant County policymakers, thereby exposing it to liability for unconstitutional violations under federal laws. Tarrant County's discordance with such policies and procedures (or the absence thereof) is foreseeably actionable insofar as it potentially demonstrates the absence of a policy or procedure that prevents jail authorities from contravening a medical doctor's recommendation concerning the safety of vulnerable and disabled pre-trial detainees who expressly require "MHMR", "protective custody", and "Navane". *Id., citing* DA 010.

58.    Defendant further concedes that "Navane is used for management of schizophrenia." *Id.,* at 7. Defendant concedes that after spending 10 days in its custody, Dr. Mian expressly recommended increasing Mr. Holden's Navane prescription. *Defendant's Motion to Dismiss,* p. 7, *citing* DA 010. When read in the light most favorable to the Plaintiff, a reasonable factfinder could foreseeably find that Defendant's policies, procedures, customs, and protocols foreseeably entitle Plaintiff to relief because Defendant Tarrant County had actual notice it was handling a deteriorating schizophrenic who was vulnerable, disabled, medicated, and in need of MHMR observation and protective custody; despite Defendant's actual notice of each aforementioned element, it designedly placed him in unconstitutional conditions of confinement near Nelson, thereby resulting in a state-created danger which caused Mr. Holden's death. Below, Plaintiff states claims upon which relief can be granted based upon these policies and procedures and is

entitled to conduct discovery concerning Defendant Tarrant County's compliance with jail doctor recommendations for "Transfer to Single Cell (55-B) within Jail protocol."

## VIII.  COUNT I – 42 U.S.C. § 1983
### FOURTEENTH, FOURTH, AND/OR FIFTH AMENDMENTS - CONDITIONS OF CONFINEMENT
#### INADEQUATE MEDICAL CARE AND/OR ARBITRARY PUNISHMENT OF PRE-TRIAL DETAINEE

59.    The foregoing paragraphs are incorporated herein as if quoted verbatim.

60.    Defendant violated its duties under the Fourteenth, Fourth, and/or Fifth Amendments to the United States Constitution to provide Mr. Holden with conditions, practices, rules, or restrictions that could reasonably accommodate him as a pre-trial detainee in their custody, thereby making it liable to Plaintiff under 42 U.S.C. § 1983.

61.    Defendant's duties to provide adequate medical care were not negated by any legitimate government interest.

62.    Defendant is responsible for providing *(inter alia)* mental health screening, counseling, protective custody, MHMR monitoring, and administering necessary medications to pre-trial detainees such as Mr. Holden.

63.    Additionally and/or alternatively, Defendant violated its constitutional duty to refrain from arbitrarily punishing a pre-trial detainee.

64.    Additionally and/or alternatively, Defendant failed to take corrective action for the pattern of assaults involving Nelson.

65.    Defendant's duties to prevent arbitrary punishment of a pre-trial detainee were not negated by any legitimate government interest.

66.    Tarrant County Jail's relevant inmate transfer procedures, policies, and/or customs are either (a) patently inadequate to prevent arbitrary punishment of pre-trial detainees; (b) patently

inadequate to prevent inadequate medical care to pre-trial detainees; or (c) systematically ignored by Tarrant County officials. Specifically, Tarrant County assigned Mr. Holden to the Belknap Unit despite a doctor's recommendations that he be placed in protective custody and receive MHMR observation and its actual knowledge that assignment to the Belknap Unit would not meet either recommendation. Therefore, Defendant's policies, procedures, or customs (or lack thereof) caused Mr. Holden's death insofar as it (1) knowingly exposed a disabled and vulnerable pre-trial detainee to a known and actual threat despite medical recommendations that he receive MHMR observation and protective custody, (2) knowingly failed to comport with said recommendations when it assigned Mr. Holden to the Belknap Unit, and (3) provided Nelson with weapons and unsupervised "hands-on" access to Mr. Holden.

67.     Defendant repeatedly failed to provide basic and recommended medical care to Mr. Holden every day that he was in the Belknap Unit.

68.     The level of medical care provided to Mr. Holden was not reasonably related to a legitimate government objective and therefore constituted punishment in violation of the Fourteenth Amendment.

69.     Additionally and/or alternatively, Defendant arbitrarily punished Mr. Holden (a pre-trial detainee) when it (a) transferred him to the Belknap Unit under the circumstances herein; (b) placed him in a cell near Nelson; (c) allowed Nelson to roam the common area with weapons while unsupervised; (d) failed to keep Nelson behind proper locks; and (e) enabled Nelson to kill Mr. Holden.

70.     Defendant Tarrant County's duties to Mr. Holden were systematically ignored by its officials because he was transferred to a highly violent and indirectly supervised unit and placed in a cell in close proximity to Nelson despite the known likelihood that Nelson would assault or kill a prisoner like Mr. Holden.

71.     Tarrant County officials deliberately or recklessly transferred Mr. Holden to the Belknap Unit where jail conditions: (a) were contrary to a jail doctor's recommendation; (b) were constitutionally inadequate to provide the required medical treatment for a pre-trial detainee with a known disability in the form of an open and obvious mental defect; (c) were exceedingly dangerous for an inmate known to be mentally challenged, un-medicated, non-violent, schizophrenic, and/or potentially incompetent; (d) permitted Nelson to wander the common area armed with weapons without supervision. These acts violated Mr. Holden's right as a pre-trial detainee to remain free from punitive measures.

72.     Additionally and/or alternatively, Tarrant County officials deliberately or recklessly placed Mr. Holden in a cell near Nelson, despite knowing that he was a high-risk, physically superior unmedicated schizophrenic sociopath accused of first-degree murder, held without bond, armed with various weapons, and allowed to roam outside of his cell unsupervised.

73.     Placement in the Belknap Unit exacerbated the already obvious significant risk of injury to Mr. Holden.

74.     Upon information and belief, the dangers in Belknap Unit were not unknown to Defendant (including its individual jailors and policy-makers).

75.     Mr. Holden's open and obvious mental deficiency placed Defendant on notice that significant harm would befall him in the Belknap Unit.

76.     Moreover, Tarrant County officials allowed Mr. Holden to remain in the Belknap Unit despite actual knowledge that he required "protective custody" and "MHMR observation". This actual knowledge reflects Mr. Holden's open and obvious disability which made him vulnerable to other dangerous inmates while confirming what common sense told his previous evaluator(s) in the Corrections Center. Specifically, Mr. Holden required basic accommodations for his disability that should have been met in a directly supervised facility. Plaintiff expects

that discovery will support her allegation that Defendant's policies and procedures were defective, incomplete, and/or routinely ignored by its officers and that Defendant had actual notice of same.

77.     The individual jailors who initiated Mr. Holden's transfer must have been aware of the significant risk of injury to a vulnerable person in the Belknap Unit.

78.     Further, the policy-makers in the jail, must have been aware that their relevant policies were either (1) inadequate for the preservation of civil rights of its inmates or to honor its inmates' civil rights or (2) flagrantly disregarded by its officers.

79.     The actual injury which Mr. Holden sustained (*i.e.*, death) was foreseeable and preventable. Defendant deliberately placed Mr. Holden in conditions of confinement amongst so many violent offenders and amid so many insecure conditions that the inference of harm to Mr. Holden must have been apparent during all phases of his transfer and transfer to the Belknap Unit. Nelson could not have murdered Mr. Holden were it not for Defendant' reckless indifference in maintaining proper prison conditions and transfer policies.

### IX.     COUNT II – 42 U.S.C. § 1983
### FOURTEENTH, FOURTH, AND/OR FIFTH AMENDMENTS –
### CONDITIONS OF CONFINEMENT
#### FAILURE TO PROTECT

80.     The foregoing paragraphs are incorporated herein as if quoted verbatim.

81.     Tarrant County violated its duties under the Fourteenth, Fourth, and/or Fifth Amendments to the United States Constitution to protect pre-trial detainees from other inmates, thereby making it liable under 42 U.S.C. § 1983.

82.     Tarrant County jailors are required to provide both a modicum of protection for inmates against other inmates and minimal civilized measures of life's necessities (including safety).

14

83.     Supervised units exist within the Tarrant County Jail that can accommodate individuals that are particularly vulnerable to predation.

84.     Defendant is liable for Mr. Holden's death because:

    a.      it or its officials were actually aware of Mr. Holden's disability;

    b.      its officials drew (or must have drawn) the inference that Mr. Holden's disability left him vulnerable to predation;

    c.      Defendant transferred Mr. Holden to the Belknap Unit without a legitimate government interest;

    d.      Defendant (without a legitimate government interest) knowingly placed Mr. Holden near Nelson;

    e.      Mr. Holden suffered actual injury (*i.e.,* death).

85.     Defendant (and/or its employees) (i) knew of and disregarded an excessive risk to Mr. Holden's health or safety, (ii) was aware of facts from which the inference could be drawn that a substantial risk of serious harm to Mr. Holden existed, and (iii) actually drew the inference that that a substantial risk of serious harm to Mr. Holden existed.

86.     Tarrant County jailors were actually aware of Mr. Holden's disability because (*inter alia*) his intake/medical evaluations (a) noted his disabilities and (b) recommended that he be placed in "protective custody", and (c) recommended that he be given MHMR observation.

87.     Mr. Holden's impairment left him at risk of significant injury in a prison's general population and was virtually certain to result in significant injury once Defendant placed him in the Belknap Unit near Nelson, particularly when Nelson was permitted to be armed with various weapons outside of his cell and without supervision.

88.     Tarrant County's officials (including Sheriff Anderson and Chief Deputy Knowles) either (1) knew that Mr. Holden would receive significant injury in the Belknap Unit near Nelson or (2) transferred him to the Belknap Unit near Nelson with such conscious disregard for the danger as to shock the conscience.

89.     Additionally, Tarrant County officials knew at the time they transferred Mr. Holden that he (*inter alia*):

  a.     was in Tarrant County Jail as a pre-trial detainee;

  b.     was detained for petty theft;

  c.     was disabled and/or significantly mentally challenged; and

  d.     was vulnerable (particularly to violent prisoners like Nelson).

90.     Defendant's decision to contravene medical recommendations was made without furthering a legitimate governmental interest.

91.     Defendant actually knew the Belknap Unit presented a variety of risk factors that exacerbated the danger of assault to vulnerable inmates like Mr. Holden, including the facts that the Belknap Unit:

  a.     housed high-risk inmates like Nelson;

  b.     contained unsecured items that would foreseeably be converted into weapons;

  c.     allowed Nelson to wander outside his cell without supervision or restraint;

  d.     allowed Nelson to wander outside his cell without supervision or restraint while armed with various weapons;

  e.     allowed Nelson to have hands-on access to vulnerable pre-trial detainees like Mr. Holden;

     f.     could not provide reasonable accommodations to a vulnerable inmate like Mr. Holden;

     g.     failed to provide adequate supervision of inmates;

     h.     failed to take corrective action that would prevent violent assaults; and

     i.     failed to take corrective action for the pattern of assaults involving Nelson.

92.     Defendant drew (or must have drawn) the inference that Mr. Holden was in substantial danger while housed in the Belknap Unit near Nelson.

93.     Additionally and/or alternatively, Mr. Holden's transfer was actuated with such reckless disregard as to shock the conscience.

94.     One or more Tarrant County officials acted with sufficient knowledge and awareness to be deliberately indifferent to Mr. Holden's constitutional right to a modicum of protection.

95.     The conditions of Mr. Holden's confinement constituted a state-created danger.

96.     As a consequence, Defendant is liable for the deprivation of Mr. Holden's civil rights under color of law.

97.     Defendant Tarrant County is responsible for Mr. Holden's wrongful death because its decision-makers were sufficiently aware that its policies were defective, incomplete, or routinely ignored by its officers so as to facilitate Mr. Holden's improper transfer to the Belknap Unit and his eventual death therein.

98.     The obviousness of the dangers to Mr. Holden within the Belknap Unit (and near Nelson in particular) and the certainty of resulting substantial harm therefrom substitute for the general notice requirement for municipal liability predicated upon defective or absent policies.

99.     Defendant Tarrant County's failure(s) to protect Mr. Holden despite his open, obvious, and known disability demonstrates a custom, policy, or procedure of assigning prisoners to cellblocks in an arbitrary or purposeless manner.

100.    Alternatively, Defendant Tarrant County's failure(s) to protect Mr. Holden despite his open, obvious, and known disability suggests a policy, procedure, or custom that enables such failures or the absence of policies, procedures, or customs that prevent them.

101.    Alternatively, Defendant Tarrant County has policies and procedures concerning prisoner transfers and/or classification that are inadequate to service the basic human right to a modicum of protection from other inmates insofar as any transfer policy that fails to recognize or implement a jail doctor's medical recommendation concerning a disabled and vulnerable pre-train detainee is reasonably certain to deprive such detainees of access to basic medical services. treatment for basic medical needs (*e.g.,* Plaintiff's schizophrenia), and/or protection.

102.    Similarly, the absence of a policy, procedure, or custom of implementing recommendations from jail doctors is reasonably certain to deprive disabled and vulnerable pre-trial detainees (like Mr. Holden) of access to protection from predation in maximum security environments with detainees like Nelson, particularly when inmates like Nelson are permitted access to weapons and "hands-on" access to pre-trial detainees like Mr. Holden.

103.    Additionally and/or alternatively, Defendant Tarrant County deprived Mr. Holden of the "minimal civilized measure of life's necessities" under the "contemporary standards of decency", including but not limited to the necessities of safety and adequate medical care.

104.    Defendant Tarrant County's conduct rises to the level of criminal recklessness insofar as it was deliberately indifferent to Mr. Holden's needs and had an underlying policy of assigning/classifying disabled and vulnerable pre-trial detainees in a manner that is contrary to

both medical recommendations and common-sense. Alternatively, its criminal recklessness can be inferred from the absence of a policy or procedure that prevented assigning/classifying pre-trial in a manner that was contrary to medical recommendations.

105.   The events leading up to Mr. Holden's death were preventable through reasonable policies and procedures.

106.   Plaintiff expects that discovery will support her allegation that Defendant's relevant policies and procedures were defective, incomplete, and/or routinely ignored by its officers and that Defendant had actual notice of same.

107.   Moreover, Defendant Tarrant County's prison guards and policy-makers  were and/or should have been aware that their  systematic failures to implement or follow policies, procedures, and/or customs reasonably  designed to prevent disabled and vulnerable pre-trial detainees like Mr. Holden from being  assigned to cell blocks with detainees like Nelson (particularly under the circumstances herein)  were certain to result in substantial injury to Tarrant County inmates like Mr. Holden. This  certainty is exacerbated by the design of the cells in which Mr. Holden and Nelson were held  insofar as they provided Nelson with "hands-on" access to weapons and pre-trial detainees  whom Defendant knew to be both disabled and vulnerable.

108.   Defendant Tarrant County  failed to ensure that its prison guards, and policy makers (1) understood the importance of known mental health issues, (2)  understood the importance of ascertaining whether or not a prisoner has known mental health  issues, (3) comported with reliable medical recommendations concerning known medical issues,  and/or (4) preventing detainees like Nelson from having hands-on access to weapons and other  pre-trial detainees that are known to be disabled and vulnerable.

109.    Defendant had a duty to make reasonable efforts to preserve Mr. Holden's civil rights (including life).

110.    Defendant failed to comport with said duty, thereby resulting in Mr. Holden's death.

## X.    COUNT III – AMERICANS WITH DISABILITIES ACT

111.    The foregoing paragraphs are incorporated herein as if quoted verbatim.

112.    Mr. Holden was disabled as defined by the Americans with Disabilities Act.

113.    Specifically, Mr. Holden had schizophrenia and a serious but unnamed mental disorder which was open and obvious to all persons who interacted with him (including Defendant's officers and medical staff).

114.    Mr. Holden's mental health condition was a disability, which made him especially vulnerable to other inmates.

115.    The necessary and reasonable accommodation for Mr. Holden's disability would have been to separate him from inmates who were potentially (or were known to be) violent.

116.    Therefore Defendant did not reasonably accommodate Mr. Holden's disability.

117.    Additionally, Defendant had actual notice that Mr. Holden was disabled, vulnerable, suicidal, psychotic, potentially incompetent, and/or required both "protective custody" and "MHMR observation".

118.    Mr. Holden's disability and vulnerability gave Defendant Tarrant County actual knowledge of the substantial potential harm that would befall Mr. Holden in the Belknap Unit at the time he was assigned thereto.

119.    Defendant violated the Americans with Disabilities Act by intentionally discriminating against Mr. Holden on the basis of his disability.

20

120.    Defendant's discriminatory acts include (a) refusing to follow a doctor's recommendations concerning his confinement and (b) placing him in a cell near Nelson.

121.    Defendant's treatment of Mr. Holden evidences the fact that Tarrant County jailors arbitrarily singled him out for punishment on the basis of his chronic impairments which affected his major life activities (including his ability to interact with others).

122.    Defendant's discriminatory intent is evidenced by its decision-making regarding:

      a.     the arbitrary transfer of Mr. Holden to Belknap Unit;

      b.     the transfer of Mr. Holden to the Belknap Unit despite medical recommendations for "protective custody" and "MHMR observation"; and

      c.     placement of Mr. Holden in a ward with persons with similar disabilities yet lacking the facilities to accommodate those disabilities.

123.    Defendant further discriminated against Mr. Holden by failing to accommodate his needs.

124.    Mr. Holden required (*inter alia*) the following reasonable accommodations: mental health screening; doctors that ensured jail personnel were aware of mental health issues; jail personnel that followed reasonable policies, procedures, or customs concerning inmates with mental health issues; direct supervision; protective custody; MHMR observation; protection from physically superior unmedicated schizophrenic sociopaths known to be a high-risk and violent offenders accused of first-degree murder held without bond (particularly when they are armed with various weapons, allowed to move outside of his cell without supervision, and provided with "hands-on" access to pre-trial detainees like Mr. Holden).

## XI.    REQUEST FOR DECLARATORY JUDGMENT

125.    Texas law states that unless a decedent has left directions in writing for the disposition of their remains, "[T]he following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains, shall inter the remains, and are liable for the reasonable cost of interment:

(1) the person designated in a written instrument signed by the decedent;

(2) the decedent's surviving spouse;

(3) any one of the decedent's surviving adult children;

(4) either one of the decedent's surviving parents;

(5) any one of the decedent's surviving adult siblings; or

(6) any adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent."

Tex. Health & Safety Code Ann. § 711.002(a) (1) – (6).

126.    Mr. Holden did not leave any directions in writing for the disposition of his remains.

127.    Mr. Holden had no spouse and no children and therefore his parents were the first in line in order of priority under Tex. Health & Safety Code Ann. § 711.002 to control the disposition of his remains.

128.    Neither of Mr. Holden's parents made final arrangements timely pursuant to Tex. Health & Safety Code Ann. § 711.002(a-1) and their rights to control the disposition of his remains terminated and passed to Plaintiff as Mr. Holden's surviving sibling. Tex. Health & Safety Code Ann. § 711.002(a-1) (1) and (2).

129.    Despite having actual notice that Mr. Holden had a sister named Jennifer Ciravolo, Defendant Tarrant County did not inform her that Mr. Holden had died in its custody.

130.    Alternatively, Defendant had actual notice that Mr. Holden had been previously arrested and incarcerated.

131.    Any reasonable investigation would have revealed Mr. Holden's previous arrests, the institutions in which he was detained, and the next of kin or emergency contacts he provided to each institution (including Plaintiff).

132.    Despite the statutory right and duty of Plaintiff to control the disposition of the remains of Mr. Holden, Defendant Tarrant County buried Mr. Holden's remains in Mansfield, Texas without providing notice to anyone in Mr. Holden's family (including Plaintiff).

133.    Plaintiff seeks to exert her statutory right to control the disposition of Mr. Holden's remains.

134.    Pursuant to Tex. Health & Safety Code Ann. § 711.004(e)(3), Plaintiff seeks an order permitting her to exhume Mr. Holden's remains from the cemetery in Mansfield, Texas.

135.    Tarrant County has no statutory right or duty to inter the remains because there was a person (Plaintiff) with the duty to inter under subsection (a) and her rights were never terminated.

136.    Therefore, Tarrant County's interment of Mr. Holden's remains was an error, particularly given the fact that a reasonable investigation would have identified Mr. Holden's next of kin.

137.    Plaintiff respectfully asks the Court to issue an Order finding:

    a.    There is a justiciable controversy concerning the rights of the parties to decide where Mr. Holden's remains should be interred;

    b.    A declaratory judgment would resolve said controversy;

c.      Said controversy is real and substantial;

d.      Said controversy involves a genuine conflict of tangible interests;

e.      Mr. Holden did not leave any directions in writing for the disposition of his remains;

f.      Plaintiff is Mr. Holden's surviving sibling;

g.      Mr. Holden's parents did not timely exercise their rights to control the disposition of his remains and therefore their rights terminated pursuant to Tex. Health & Safety Code Ann.§ 711.002(a-1);

h.      Plaintiff is Mr. Holden's surviving adult sibling;

i.      Plaintiff has legal authority to seek the exhumation and relocation of Mr. Holden's remains;

j.      Despite having actual notice that Mr. Holden had a sister, Defendant Tarrant County did not inform her that Mr. Holden had died (or, alternatively, that Defendant Tarrant County could have identified Plaintiff as Mr. Holden's next of kin);

k.      Defendant Tarrant County did not exercise reasonable diligence in its attempts to identify Mr. Holden's next of kin;

l.      Defendant Tarrant County buried Mr. Holden's remains in Mansfield, Texas;

m.      Defendant Tarrant County is responsible for improperly interring Mr. Holden's remains in Mansfield, Texas;

n.      Defendant Tarrant County has no legal right to prevent Plaintiff from exhuming and relocating her brother's remains; and

24

o.   Defendant Tarrant County improperly exercised the right to inter the remains of Mr. Holden, necessitating the exhumation of his remains.

138.   Plaintiff suffers mental anguish damages each day that Mr. Holden's remains are interred in the wrong location.

139.   Pursuant to Texas Health and Safety Code, Plaintiff respectfully asks the Court to issue an Order that Plaintiff has the right to remove Mr. Holden's remains forthwith and relocate them to a suitable location of Plaintiff's choice.


## XVI.   **DAMAGES**

140.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries and damages. Plaintiff therefore seeks general damages, loss of life damages, pain and suffering damages, and punitive damages.

141.   Also under Counts I, II, or III, Plaintiff also seeks to recover all damages and costs associated with the exhumation and relocation of Mr. Holden's remains.


## XVII.   **ATTORNEY FEES**

142.   Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. §§ 1988, 12205, and 12133 and under Tex. Civ. Prac. & Rem. Code §37.009.


## XVIII.   **PRAYER**

143.   For these reasons, Plaintiff asks for judgment against Defendant for the following:

(a)   pain and suffering damages;

(b)   emotional distress damages;

(c)     mental distress damages;

(d)     punitive damages;

(e)     presumed damages;

(f)     nominal damages;

(g)     reasonable attorney fees;

(h)     costs of suit;

(i)     a declaratory judgment establishing (*inter alia*) Plaintiff's right to exhume and relocate Mr. Holden's remains; and

(j)     all other relief the court deems appropriate.

Respectfully submitted,

By: _____

Kervyn B. Altaffer Jr.
Texas Bar No. 01116575
Email: kervyn@altafferlaw.com

LAW OFFICE OF KERVYN B. ALTAFFER JR.
13140 Coit Road, Suite 440
Dallas, Texas 75240
Tel: 972.234.3633
Fax: 972.947.3663

William Pieratt Demond
Texas Bar No. 24058931
Email: william.demond@demondhassan.com

Meagan Hassan
Texas Bar No. 24065385
Email: meagan.hassan@demondhassan.com

DEMOND & HASSAN, PLLC
2450 Louisiana St., Suite 400-528
Houston, Texas 77006
Tel: 713.701.5240
Fax: 713.588.8407

and

James C. Harrington
Texas Bar No. 09048500

Brian McGiverin
Texas Bar No. 24067760
Email: brian@texascivilrightsproject.org

TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, Texas 78741
Tel: 512.474.5073
Fax: 512.474.0726

ATTORNEYS FOR PLAINTIFF

27

## CERTIFICATE OF SERVICE

Counsel for Defendants has been served with a copy of the foregoing by certified mail.

Kervyn B. Altaffer Jr.